IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MYRON V. GIBBS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 18-1756-LPS |
| | : | |
| ROBERT MAY, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

**MEMORANDUM OPINION**

Myron Gibbs. *Pro Se* Petitioner.

Matthew C. Bloom, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

September 12, 2022
Wilmington, Delaware

---

[1] Warden Robert May has replaced Warden Dana Metzger, an original party to this case. *See* Fed. R. Civ. P. 25(d).



**STARK, U.S. Circuit Judge:**

I.     **INTRODUCTION**

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Myron Gibbs ("Petitioner"). (D.I. 1) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 12; D.I. 19) For the reasons discussed, the Court will dismiss the Petition as time-barred under the limitations period prescribed in 28 U.S.C. § 2244.

II.     **BACKGROUND**

> [NB], who was 17 years old at the time of the incident, claimed that on November 12, 2009, while she was walking home in the rain, [Petitioner] stopped his truck and offered to give her a ride home. Since it was raining, she accepted the ride. Instead of taking her the short distance to her home, [Petitioner] made several other stops around the City of Wilmington and ultimately took her back to his apartment on the other side of town.
>
> At trial, [NB] testified that Petitioner forced her into his apartment, locked her in a room, tied her hands behind her back, pushed her repeatedly on the bed, slapped her, removed her pants and underwear, penetrated her vagina with his penis and ultimately ejaculated inside of her. [NB] testified that when she was able to leave the apartment, she immediately went to her aunt's home a block away and called her father. [NB] described going to the hospital, having an examination by the SANE (Sexual Assault Nurse Examiner) nurse and speaking with Detective Ronald Mullin at the Wilmington Police Department.
>
> [NB's] interview with Detective Mullin on the day of the incident, November 12, 2009, was recorded.
>
> The DNA evidence at trial conclusively established that a sexual encounter occurred between [NB] and [Petitioner].

*State v. Gibbs*, 2015 WL 353932, at *1-2 (Del. Super. Ct. Jan. 27, 2015).

Petitioner was arrested on November 13, 2009. (D.I. 12 at 1) On December 21, 2009, a New Castle County grand jury indicted Petitioner on charges of first-degree rape, second-degree

kidnapping, fourth-degree rape, and offensive touching. (*Id.*) Petitioner's case proceeded to a jury trial in the Delaware Superior Court on June 29, 2010. (*Id.*) Petitioner's defense theory was that the sexual encounter that occurred between NB and Petitioner on November 12, 2009 was consensual in nature. *See Gibbs*, 2015 WL 353932, at *3. On July 7, 2010, the jury found Petitioner guilty of second-degree rape (as a lesser-included offense of first-degree rape), fourth-degree rape, and offensive touching. *See id.* at *3; D.I. 12 at 1. The jury acquitted Petitioner of first-degree rape and second-degree kidnapping. *See id.* at *3; D.I. 12 at 1-2. On September 17, 2010, the Superior Court sentenced Petitioner to fifteen years in prison, followed by thirty months of decreasing levels of supervision, and a $200 fine. (D.I. 13-28 at 19-20) On August 3, 2011, the Delaware Supreme Court affirmed Petitioner's convictions on direct appeal. *See Gibbs v. State*, 26 A.3d 213 (Table), 2011 WL 3427211, at *2 (Del. Aug. 3, 2011).

On July 27, 2012, Petitioner filed a *pro se* motion for an extension of time to file a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 13-1 at 7 Entry No. 52; D.I. 13-48) On August 6, 2012, while the motion for an extension of time was still pending, Petitioner filed in the Superior Court his first *pro se* Rule 61 motion. (D.I 13-42) The Superior Court denied Petitioner's motion for an extension of time on August 2012. (D.I. 13-1 at 7 Entry No. 53; D.I. 13-43) After filing several subsequent motions and amendments, Petitioner filed a motion for appointment of counsel in July 2013. (D.I. 13-48; D.I. 13-52) The Superior Court granted the motion and appointed counsel to represent Petitioner during his first Rule 61 proceeding ("post-conviction counsel"). (D.I. 13-53) Post-conviction counsel filed an amended Rule 61 motion on Petitioner's behalf on June 2, 2014. (D.I. 13-54) The Superior Court denied Petitioner's first Rule 61 motion on April 10, 2015. *See Gibbs*, 2015 WL 353932, at *1.

3

Petitioner appealed, and the Delaware Supreme Court affirmed that judgment on May 20, 2016. (D.I. 13-34; *see also Gibbs v. State,* 140 A.3d 434 (Table), 2016 WL 3449916, at *1 (Del. May 20, 2016))

Petitioner filed a second *pro se* Rule 61 motion on September 28, 2016, which the Superior Court denied as procedurally barred on February 28, 2017. (D.I. 13-57; D.I. 13-59; D.I. 13-60) The Delaware Supreme Court affirmed the Superior Court's judgment on August 7, 2017. (D.I. 13-38; *Gibbs v. State*, 169 A.3d 859 (Table), 2017 WL 3392149 (Del. Aug. 7, 2017))

Petitioner filed a third *pro se* Rule 61 motion on November 15, 2017. (D.I. 13-61) The Superior Court denied the third Rule 61 motion on March 15, 2018, and the Delaware Supreme Court affirmed that judgment on June 8, 2018. (D.I. 13-65; D.I. 13-41; *Gibbs v. State*, 188 A.3d 823 (Table), 2018 WL 2769012 (Del. June 8, 2018))

Petitioner filed the instant Petition in November 2018, asserting two grounds for relief: (1) defense counsel provided ineffective assistance by stipulating that the State had proven an element of second-degree kidnapping and by failing to "object to the State improperly amending its indictment;" and (2) defense counsel provided ineffective assistance by failing to investigate and subpoena four witnesses to testify on his behalf to support the defense theory of consensual sex. (D.I. 1 at 7; D.I. 2 at 8-11, 20-21)

### III.     ONE YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

4

>> States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling, which, when applicable, may extend the filing period. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner's § 2254 Petition, filed in 2018, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Given these circumstances, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court conviction but does not seek certiorari review, his judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day period allowed for seeking certiorari review. *See Gonzalez v. Thaler,* 565 U.S. 134, 150 (2012). The Delaware Supreme Court affirmed Petitioner's conviction on August 3, 2011, and he did not seek certiorari review by the United States Supreme Court.

5

Consequently, his judgment of conviction became final on November 2, 2011. Applying the one-year limitations period to that date, Petitioner had until November 2, 2012 to timely file his Petition.[2]

Petitioner electronically filed the instant Petition on November 4, 2018, six years after the expiration of the limitations period. Therefore, his habeas Petition is untimely, unless the limitations period can be statutorily or equitably tolled, or he demonstrates a gateway claim of actual innocence. The Court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001). In addition, a post-conviction motion that

---

[2]The Court notes that 2012 was a leap year, consisting of 366 days. Nevertheless, "[e]very federal court that has addressed the issue has concluded that [the] method in [Fed. R. Civ. P. 6], *i.e.*, the 'anniversary' method, for calculating a time period applies to [] AEDPA's one-year limitation period." *Nunez v. California*, 2014 WL 809206, at *3 n.9 (N.D. Ohio Feb. 25, 2014) (collecting cases); *see also Dennis v. Crow*, 791 F. App'x 775, 776 (10th Cir. Jan. 29, 2020). "Under the 'anniversary' method, the first day of the one-year limitations period is the day after the triggering event, thus giving petitioners 'until the close of business on the anniversary date of ...' the triggering event to file a federal habeas petition." *Id.* Using the anniversary method in this case (and, essentially, ignoring the leap day), results in November 2, 2012 being the last day of AEDPA's limitations period.

is untimely under state law is not properly filed for § 2244(d)(2) purposes and, therefore, has no statutory tolling effect. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

Here, 277 days of AEDPA's limitations period lapsed before Petitioner filed his first Rule 61 motion on August 6, 2012. The Superior Court denied the motion, and the Delaware Supreme Court affirmed that decision on May 20, 2016. In these circumstances, Petitioner's Rule 61 motion tolled the limitations period from August 6, 2012 through May 20, 2016. The limitations clock started to run again on May 21, 2016, and ran the remaining eighty-eight days without interruption until the limitations period expired on August 17, 2016. Petitioner's second and third Rule 61 motions – filed on September 28, 2016 and in November 2017, respectively – do not trigger any statutory tolling, because they were filed after the limitations period expired. Thus, even with the applicable statutory tolling, the Petition is time-barred, unless equitable tolling or the actual innocence gateway exception apply.

### B. Equitable Tolling

AEDPA's limitations period may be tolled for equitable reasons in appropriate cases. *See Holland*, 560 U.S. at 645. A petitioner can only qualify for equitable tolling by demonstrating "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing," *id.* at 648; mere excusable neglect is insufficient. *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004). Consistent with these principles, the Third Circuit has limited the equitable tolling of AEDPA's limitations period to the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

7

*Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999); *see also Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Petitioner does not explicitly assert that any extraordinary circumstance prevented him from timely filing the instant Petition. To the extent Petitioner attempts to characterize the "delays" in his Rule 61 proceedings as extraordinary circumstances, the attempt is unavailing. (D.I. 1 at 13-14; D.I. 19 at 1) As just explained, the limitations period was tolled during Petitioner's first Rule 61 proceeding, and Petitioner has not explained how he was prevented from timely filing the instant Petition after the conclusion of the first Rule 61 proceeding. Even if the Court were to view Petitioner's motion for an extension of time to file a Rule 61 motion that he filed on July 27, 2012 as an event triggering equitable tolling,[3] adding the extra ten days (*i.e.*, the days between July 27, 2012 and August 6, 2012) to the tolling computation does not render the Petition timely. Finally, to the extent Petitioner's untimely filing of the Petition was due to his own ignorance of the law or the result of his miscalculation regarding the one-year filing period, such factors do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

Based on the foregoing, the Court concludes that that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented.

---

[3]The Court is not asserting that the motion for an extension of time should be viewed as a triggering event for equitable tolling purposes. Rather, the Court only includes this hypothetical scenario to be thorough.

### C. Actual Innocence

A credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151. A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace*, 2 F.4th at 151. Evidence is new for purposes of the actual innocence gateway, even if it was available for trial counsel through reasonable diligence, if trial counsel's failure to discover or present it is alleged as ineffective assistance of counsel. *See Reeves v. Fayette SCI*, 897 F.3d 154, 164 (3d Cir. 2018). Three examples of reliable evidence, in this context, are "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In his Response, Petitioner avers that he "actually did not commit the crimes [he] was convicted of and [he] desperately tried to get evidence presented in corroboration of this fact for seven long hard months but [he] could not get [his] attorney to do things he did not want to do." (D.I. 19 at 8) Petitioner asserts that he "would have taken the stand" if defense counsel had called "all available witnesses" to testify, and identifies the following witnesses and their potential testimony: (1) NB's aunt, who was the first eyewitness to see her after the rape, could have testified about NB's lifestyle and criminal history as impeachment evidence; (2) employees at the thrift store where Petitioner and NB stopped along their route could have testified that NB was with him willingly before the rape; (3) a clerk at the liquor store where Petitioner purchased beer could have testified that NB was with him willingly before the rape; and (4) a rebuttal expert witness. (D.I. 1 at 7; D.I. 2 at 20-21) Petitioner does not identify the evidence a rebuttal expert would have provided.

9

For the most part, Petitioner's conclusory and unsupported description of the potential testimony these individuals could have provided constitutes evidence similar to and/or cumulative of what was already presented at trial. Because the potential testimony does not contradict the testimony provided at trial, Petitioner has failed to demonstrate that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt" if the proposed additional witnesses had testified. *McQuiggan*, 569 U.S. at 386. Therefore, Petitioner has failed to provide evidence sufficiently reliable and persuasive enough to satisfy the actual innocence gateway standard.

Accordingly, the Court will dismiss the instant Petitioner as time-barred.[4]

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A federal court denying a habeas petition on procedural grounds without reaching the underlying constitutional claims is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief because it is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

---

[4]Having determined that the Petition is time-barred, the Court will not address the State's alternate reasons for dismissing the Petition.

**V.      CONCLUSION**

For the reasons discussed, the Court will dismiss the instant Petition as time-barred, and dismiss the pending Motion as moot.  The Court also declines to issue a certificate of appealability. An appropriate Order will be entered.